2021 50986 United States v. Nicole Elizabeth Foreman. Mr. Parenti, you may proceed. Good morning. May it please the Court? My name is Mark Parenti and I represent Nicole Foreman. First, I'm going to address the Confrontation Clause violation, then the harm, and later if the Court wishes, I can address the hearsay violations. The government cannot meet its burden in this Confrontation Clause case of establishing that the evidence of issue is non-testimonial. The government admits the obvious in its brief at page 19, that the alien smuggling investigative report at issue here was prepared for criminal investigations. As for the statements of the men contained in the report, Crawford makes clear that statements taken by police officers during the course of interrogations are testimonial. The government does not address the statement by Agent Lyserio contained in the report that the men after he interviewed them were determined to be aliens. Was he listed as a witness ever? Ma'am? Was Agent Lyserio ever listed as a witness? No, he was not listed as a witness and that's in our brief we cite to the government's witness list. Does this only apply for the conviction for transporting illegal aliens or do you also believe it would be applicable for the conspiracy and if so, how would that work because it does seem there's some other evidence in the record regarding the conspiracy, a lot, a significant amount of evidence perhaps. My alerted friend is correct that evidence of proof of aliens is not necessary to prove the conspiracy to transport aliens. However, as my alerted friend does recognize in his brief that this court in Jones and Hayman held that where the conspiracy is closely linked to the underlying crime, this court will find harm and the conspiracy of transporting aliens is manifestly closely linked to the substantive offense of transporting aliens. The fact that the government could, if the government proved that the people that Ms. Foreman were with in the car were aliens, that would strongly suggest her participation in a conspiracy to transport aliens. So the confrontation clause, it's violated here because the statements were testimonial. They were not as the government alleges administrative as they were in the case cited by the government in Noria. In Noria, this court found that the statements contained in the record of inadmissible or deportable alien were administrative because those were taken in the processing of inadmissible aliens in a routine and non-adversarial setting. Here, the evidence, the statements by the men and Mr. Agent Lacerio's statement after interviewing them were made for the primary purposes, primary purpose of a criminal investigation. Here the criminal investigation of alien smuggling or transporting aliens. What other way could the government have gotten this information before the jury as to the alien status? There are a number of them. The most, the usual one is they could have the purported aliens testify in trial. Oh, they were deported? They all deported before trial? They were, we know that they were not present by the testimony of Mr. Sands. The usual process is that the government makes the purported aliens available for material witness depositions. I conducted my first one of these 20 years ago. It's a standard process in the Western District of Texas. Don't we have a case that discusses how the government has a responsibility not like if these people get in the wind and that they either need to do this type of deposition or hold them or make so that they will stay available in some sort of way? I thought we had a case on that. Yes, Your Honor. Foster was the case. You're probably remembering. In Foster, that El Paso case, there were material witness depositions, which we did not even have here. And in Foster, the government from that record didn't, it wasn't, the government did not, the court did not find that the government made sufficient efforts to make those men available after that material witness deposition. Here, we didn't even have that. Here, we had proof of alienage by a piece of paper that another Border Patrol agent read off of, that Agent Sands reading off of the report of Agent Lozario. And Agent Sands testified he didn't even speak to any of the purported aliens. And of the four witnesses the government put on a trial, none of them spoke to the aliens. Did you, can you remind us about what was done before the district court to explain to the district court that this had a hearsay, even if it were a business record as to part of it, that the other part wouldn't be proved up because it was hearsay statements by others? Was that thoroughly explained to the district court? Yes, Your Honor. There was a well-briefed and extensive motion in limine by trial counsel. But was it objected then again? The objections, Your Honor, were confrontation clause and hearsay. And later at trial, trial counsel discovered that it was hearsay within hearsay. Because it seems that it's pretty basic, that when you have business records and they have statements of others, that that's hearsay. Yes, Your Honor. And the one thing that comes clear when you read the Federal Rules of Evidence and their accompanying notes are that business records and public records do not include statements of— By other parties contained therein. Particularly by criminal defendants interrogated by police officers. That is, that's clearly set out in the Federal Rules of Evidence. And as to the hearsay, the government did not respond in writing to the motion in limine. The government didn't even cite by name the correct case, Noria. And the government at trial disowned that this would be a public record under the hearsay objection. What's your best case that this applies to the conspiracy count? My best case would be Noria and Jones. Okay, that's the genuine— No, excuse me, Heyman and Jones. Yeah. Did the government attempt to introduce documentation, evidence showing that the aliens had been reported and did you object? No, the government didn't introduce any documentary evidence about the later exclusion of the aliens. The only evidence was Agent Sand's testimony that the men were no longer in his facility. So there were no records of deportation. There were no A-files. There was not even the record of an inadmissible deportable alien under Noria, the I-213 form. All we have is this criminal investigation report. The government cannot—and it's not—the court doesn't have to rely merely on the fact that the conspiracy is closely linked to the underlying crime to find harm. The court could look at the factors in Heyman about how this court or how the government used the evidence at trial. What this court does is it looks at how the evidence was used in this case. It doesn't try to hypothesize what a case would have looked like if this evidence had been excluded and would there have been sufficient evidence to convict this foreman. The question here is whether or not there is no reasonable possibility to prove the evidence complained of might have contributed to conviction. And in looking at how that evidence was used, this court has looked to whether or not the evidence was used in closing. Twice, the record at 488 and at 502, the government referred to this evidence at closing. And the court has found it's more likely than not to find harm if it's referred to in closing. This wasn't a case where there was only fleeting references made to this unconstitutional testimony. It was referred to by the government at 333 in its opening statement. It was used extensively in its case in chief explicitly to prove citizenship. And again, it was referred twice and relied on twice in the closing statements. This is not a case where the unconstitutional evidence was only used to prove an uncontested element. The government admits in its brief at 23 that Ms. Foreman contested the alienage of the men found with her, her knowledge of the alienage, and her knowledge of the scheme. In the government's closing, it's interesting, if you read the government's closing, it was basically constructed for it to prove up that there was an agreement between Ms. Foreman and Mr. Cannon to transport aliens. It started off its closing by saying, this is a case about a partnership in crime, and you've heard plenty of evidence as to what picking up people means. And that was kind of the ambiguous phrase at the center of this case. And then the court attempted to marshal its evidence to prove what picking up people meant. And in its theory of the case, picking up people meant picking up aliens. And at 488, the government explicitly said, you heard from a border patrol agent to that end that none of the people he found, none of the people found with Ms. Foreman were citizens of the United States. So it was central to the government's proof of conspiracy as used in its closing statement. And in fact, Sarli asked, in that court, the Sarli court asked, well, where can we find a statement closing argument to show how the evidence was used? Here we have that statement where the government is using it, the proof of alienage to prove that there was an agreement with Ms. Foreman and Mr. Cannon to transport aliens, that's what to pick up people meant. Sarli, of course, also says that the government's burden is demanding but not insurmountable burden. The government has not overleaped this hurdle. Sarli and Sarli, the defendant, disputed, he did not dispute possessing drugs, he disputed his knowledge of the possession of the drugs. Here, in contrast, Ms. Foreman at trial disputed that the men with her were aliens and she disputed that the men she would be picking up would be aliens. This court should not create a different rule in alien smuggling cases under the hearsay rule. I think it's important that we note that we are in a court of the United States of America and not the United Kingdom in part because the— Why would we create a different rule? I don't understand this argument. A different rule meaning that in an alien smuggling case that a criminal investigation report like that used here would be used to—it would be non-testimonial. What about the United Kingdom? I'm sorry, what were you going with that? Merely that alien smuggling cases were well known to the founders and that's the reason why we have the Sixth Amendment's Confrontation Clause because the United Kingdom, the British Parliament, decided it was going to prosecute smuggling cases without the right of confrontation or without jury trials. So this is—so the Confrontation Clause in the Sixth Amendment and smuggling in general was something well known to the founders and we don't need a special rule to deal with these contingencies. We should apply the Constitution and the Confrontation Clause as written. My time is up. Thank you. Thank you. You save time for rebuttal. Mr. Durbin. Good morning. May it please the Court, Richard Durbin for the United States. I'll start with the harmless because I think it's our strongest argument, especially as to the conspiracy, but I think harmless applies to both of the counts. The document that was entered that established that the individuals taken from Ms. Forman's vehicle were born in Mexico and identified themselves as having been born in Mexico did not go to prove her knowledge and the conspiracy goes to her knowledge or belief that they were aliens that she was agreeing to smuggle. They didn't have to be aliens for her to conspire. They could have been totally mistaken about their alienage. And the evidence of the conspiracy was very substantial. For conspiracy, they don't have to be aliens, but for the other one, they definitely—  So do you think that one has a chance? I do, Your Honor, and this is—as I run through it, the harmless analysis looks at first the government's use of the evidence. The government used the evidence to prove alienage. It was not a complete element of the offense. The element of the offense was that they transport aliens who are unlawfully in the United States. The testimony and the document, Government Exhibit 5, did not establish they were unlawfully in the United States. There was testimony from Agent Science that they were all returned to Mexico. The process is not in the record. I don't know if it was voluntary return, deportation, reinstatement of removals. That's not in the record. But his testimony was he knew of his own that they had all been returned to Mexico, which is evidence—is additional evidence that they were aliens, that they were not citizens of the United States. Another circumstance that the court looks at in assessing harmfulness or harmlessness is how important that evidence was and whether or not it was cumulative. And I'd submit to the court the circumstances strongly proved that she was transporting aliens. One o'clock in the morning, remote Van Horn, Texas. She drove several hours. It was her vehicle that was used for the transport from Odessa to this remote location in Van Horn. When she was with Ira Cannon at the residence where he was getting directions on where to go pick these people up and where to return them to, she said in her post-arrest interview, she dropped a pin on her phone for the location of where the drop-off would be. So she knew what the scheme was. She knew what it was about before they even left for Van Horn, Texas. Didn't she refer to them as Mexicans? She does refer to them as Mexicans when they get into the car. They drive to Van Horn at 1 o'clock, 2 o'clock in the morning, honk the horn at a covert, and she says, all these men came running, a bunch of freaking Mexicans is how she described it. And there's a photograph in her brief that came from the record that shows them in the back of this van. It's pretty clear that these are not hitchhikers, and this isn't just picking up some folks to take them to the airport. They had multiple layers of clothing. They smelled like they had been in the desert for a number of days walking through it. She referred to them as freaking Mexicans. And she also talked with Cannon. Both she said in her statement and Cannon testified that she talked about the payment. She was going to get half of the money he was going to get, which he said was $14,000. And she was cogent enough to ask, well, they're all from Mexico. How are you going to get the money? So she knew what this scheme was about. She certainly knew that she was involved in a conspiracy to transport aliens unlawfully. And when she was pulled over, she immediately texted her husband. The first thing she said is, I think I'm going to jail, but I was just trying to get us some extra money. So she knew what the scheme was. And I think all of those circumstances also are circumstantial evidence that these were aliens and that they were in the United States unlawfully and that she was transporting, raiding, and abetting the transport of them in furtherance of their being here unlawfully. So what we come down to is this document goes in that I guess confirms that they told an agent that they were all from Mexico. And the document contains their names. It contains their date of birth. And it contains their place of birth or their country of birth. They were all born in Mexico, they reported. The document filled out by Agent Lozario? Yes. Why wasn't he called to testify? I don't know. He was not available. It seems like a major question to me. I don't know why you wouldn't know. Well, I don't. There may have been some unrelated issue with him. I don't know what it was. He was still employed? I don't know that, Your Honor.  It's not in the record. It wasn't established in the record. Did we know why they didn't have material witness depositions before they left the country under whatever circumstances? In light of NORIA, our practice has changed and we don't take depositions of material witnesses in all cases. So what are you doing to make sure that they have a confrontation, the confrontation right is preserved then? We're following NORIA and in most cases we put in the I-213. In this particular case, there were no I-213s. So in light of that case that allowed that, you changed your process and there's a much less opportunity for cross-examination of every single one of these people? Yes, that's correct as far as the material witnesses are concerned. Unless there's a special reason to keep them, I don't know the timing of their release. In this circumstance . . . So if we were to find this harmless, would we contribute to that decreased confrontation right? I don't know if you'd contribute to it because NORIA already establishes that and that's the practice that's been followed. But it's a different form. It's a different form and what I wanted to point out to the Court that if this information which NORIA and NORIA discusses at some length in the Eleventh Circuit case, Caravaglio, that talks about this type of information. This is biographical information that Border Patrol agents or CBP agents or officers get from every alien that they encounter. Not just smuggling cases, but every alien they encounter. In this particular case, I don't believe I-213s were done on each of them because they were removed quickly because as Agent Saenz referred to in his testimony, they had experienced over the last nine months in this region an enormous influx of people coming across the border. A large part of what Border Patrol does is not simply investigate criminal violations, but they're also involved in the administrative process of removing or sending aliens back to the country of origin. That's what was going on in this instance and I think what happened in this case is the form that was used to document that information, which would be used in connection with the administrative function as to those aliens, was put on this investigative form. They didn't do a separate 213 in this particular matter as each of the aliens because they were expediting their return to Mexico. Why do you think that the-I mean, you started off with harmlessness, so I think that that means that you think that the Court probably erred. I don't think that- Well, can you address that? Because it would seem to me that it's testimonial and it's separate. It's from a third party, so can you help with that? Yes, in part. As to whether or not it's testimonial, as I read NORIA, what Judge Higginbotham said in that case was that for a form 213, the declarant in that form is not the officer who fills it out. It's the alien who provides the information. So the hearsay and hearsay isn't a problem because the declarant was the aliens themselves. And so the document itself- But the alien's business record, why would that take away the confrontation right because they put in some form of someone else's that was kept by someone else? Making that person the declarant, how does that solve the hearsay problem? Well, because the declarant is the alien and it's in a record that is admissible and that the district court admitted under essentially an analogy to a business record. But a police record, I mean, basic police record. They have witness statements in those too. That would be the same exact thing and those would not be admissible, those witness statements. Well, those aren't admissible, I think, under Rule 8038. Specifically, they're not admissible because it excludes reports by police officers. So then under the hearsay rule, it would be excluded. But as I understand, NORIA, Judge Higginbotham, has held essentially that the declarant in those forms is the alien himself and what the officer is doing is simply reporting and writing down what the alienage is and what that information is and that's in that record and the record, therefore, is admissible. The circumstance here is this wasn't an I-213. You weren't there. I was not there. So was there any concern about this hearsay? The government didn't even respond to the brief in the district court. No. What the government did, as I understand it, it didn't cite the case, but I think the case the government was referring to was the NORIA case as the case that allowed its admission. And the district court specifically asked in laying the foundation, page 364 of the record, the district court, it was identified as an alien smuggling case report and does the report also include the citizenship of the people involved? Yes. Is it made in every smuggling encounter? Yes. And is that regardless if the case is going to trial? Yes, sir. And then a few pages later, the district court in admitting the document confirmed that the information was not taken for the purpose of going to trial in a criminal case. And so the district court, I think, was recognizing it's not a – we didn't offer it as a public record. Frankly, I kind of think that as to this little bit of information under NORIA, it is a public record as to that information if you accept the rationale. But you specifically said it wasn't a public record. We did. We said it wasn't a public record. But I don't think that prevents the court from finding that that's a proper basis for upholding the outcome. When your person disclaimed it? We make mistakes, Judge. I'm not saying – Well, everybody makes mistakes. Yes. But our job is to figure out if people made mistakes, then what is the result of that in the criminal case here? I understand that. And that's why – I recognize this is a strange set of circumstances that this information came in in what is clearly a criminal investigative report. I can't say that it's any otherwise. What they tried to do was take out everything that went to the jury that made it look like a criminal investigative report, and what you're left with is the information that gets collected for administrative reasons from every alien encounter. Why shouldn't we just hold that this is a criminal investigative report and it's not this other report and this should be treated traditionally? Because I think that elevates form over substance. That's the problem I have with it is that, okay, it didn't go on a form that said 213. Well, the other one already stretched against confrontation, so we're just going to keep going down the path. As to this particular piece of information from people encountered under these circumstances, yes. Okay. I think so. Assuming arguendo, and I'm not foreshadowing, that you prevailed on your conspiracy argument but not on the alienage count, what result? Well, I think the result would be that the conspiracy would stand. We would probably not go forward in a retrial on the substantive count. No. I mean, we have to remand. We remand for this. Yes. I'm sorry. I was two steps down the road. I apologize. No, I think that you would have to find that the admission of the evidence affected count one and that it was not harmless. And I think that on this record, it was harmless, and for the reasons that I've already stated. I don't think it affected the jury's deliberation or outcome in this case. But would re-sentencing on the conspiracy or not? What are we remanding for? That's what I'm—if we were going to remand. You remand for further action consistent with a court's opinion, which I don't know off the top of my head if that would be re-sentencing. It probably would, but I think that the outcome is going to be the same. The main difference is going to be the special assessment would be vacated and set aside. The actual sentence, I don't think it would affect the sentencing guidelines. There's just one conviction. The sentence is the same for both charges. Yes. You lose the transportation charge. Yes. If you send it back, if you decide to try that, to keep prosecuting on that one count, would you call Agent Lucerio? What would you do different to get this information before the jury that gives Ms. Foreman the right of confrontation? Well, we would have to present evidence consistent with whatever the court's ruling is. I don't know if Lucerio is available. I simply don't know his status. I don't know if he's employed by the agency any longer or not. If this court's ruling is, well, you have to have him because there's a hearsay problem, then under that circumstance, my guess would be . . . I can't commit to it, but my guess would be we wouldn't have evidence to go forward on that. I don't have that information. The lawyers who tried this case are no longer with the office. I have some institutional knowledge that I tapped into. By the way, I don't want to make things more complicated, but I looked into Government Exhibit 5 because if you look in the electronic record on appeal, Government Exhibit 5 does not have redactions that fully correspond to the discussion in a trial about what exhibit went back because . . . and what I've been able to piece together is we filed an electronic version of 5, but during the process of admitting the document, there was more discussion and there were further redactions, so there was a hard copy that's not . . . that didn't make its way into the record, but had the redactions that are consistent with what is described in the transcript. I think it's at pages 370 or 371 about that part of the transcript. References to smuggled alien were taken out. Reference to smuggling investigation was taken out. But the document we have is wrong then? I believe so, Your Honor. I believe so. And I got that from the IT person who was in the courtroom who dealt with those records. I think what happened in Pecos is that the right one went in, but it didn't get put into the electronic record at the time. I don't know if you'll notice that, but I noticed it and so did a little poking around. That's what I found out. As for Lucerio, I don't know what his status is. But having said that, I submit to the court the controlling case is, I think, Noria. I think Caravaglio of the Eleventh Circuit is instructive. There is also a case out of this circuit. It's not published. It has no precedential value, but it's cited in the brief as Rodriguez, which basically was these facts. And in a very short opinion, the court affirmed the conviction and did not reverse based on or did not find it was improper to introduce a 213 for the purpose of proving the alienage of the people who were being transported. As I say, it has no precedential effect, but I think you can affirm on that basis, and I strongly encourage you to affirm under harmless error analysis that given the evidence in the case and what had to be proved, that the evidence that she transported aliens who were unlawfully in the United States in furtherance of their being here and that she conspired to do so, all of that evidence is established, not simply independent of the Government Exhibit 5, but that Government Exhibit 5 wasn't even necessary to prove that. And that's what I submit to the court. Are there no further questions? I'll give you my last minute and a half back. Thank you. Thank you. One point about Noria. Noria involved an illegal re-entry case, and there was a good bit of discussion in Noria that the declarant statements in the I-213s was that of the alien himself. It didn't hold on that basis, but that made Noria different in this case. Can you discuss the differences between the documents, the criminal investigative report, and the immigration form in Noria? I would say that the major difference is the report of investigation has information necessary for the establishment and prosecution of the crime of transporting aliens or alien smuggling. It lists not just who the purported aliens are, as you would see in the I-213, but it has the principal and the associate, which was not stripped out of the redacted version as set out in testimony. In fact, Agent Sands testified as to what the word associate meant that was associated with Miss Foreman. He testified that that meant that she was the co-conspirator to Mr. Cannon. They didn't take out everything, so it's not just a piece of paper that has the men's birthdates and place of births. This is clearly a police report of an investigation, whereas Noria, that record of an inadmissible alien, this court found that that was administrative. This is simply a different beast. As to circumstances, my learned friend hangs his hat on the idea that there were a lot of circumstantial evidence in this case aside from the constitutional violation. As an initial point, that's not this court's task, is to see whether or not there was enough circumstantial evidence without the violative testimony to convict. It is under harmless error, isn't it? We're not under harmless error. This was fully objected to, and this is de novo. To look at a case that involved a lot of circumstantial evidence, that the government cites in its brief, Kizzee. In the Kizzee case, there was a Confrontation Clause violation. In Kizzee, the police announced their presence. Forty-five seconds later, they breached the building, and they found Mr. Kizzee standing over a toilet with a five-gallon jug of water emptying it into the toilet. They found several rifles, $1,100 worth of cash in his pocket, a gram of crack cocaine, a safe, and a bill-counting machine. In that possession with intent to distribute case, this court found harm because an out-of-court statement by an informant said that he had sold Mr. Kizzee drugs. That was a mountain of circumstantial evidence, and this court still found harm because, in this case, what happened was the statements in the investigative report, they did contribute to the conviction of both of transportation of aliens and conspiracy to transport aliens. The government has a hard burden and hasn't met the burden of proving there was no reasonable possibility that the evidence complained of might have contributed to the conviction. The very fact that you have this Border Patrol supervisor stand up and say all these people were illegal aliens and point out in the form that his fellow agent had written that Ms. Forman was an associate of Mr. Cannon. Was Cannon tried? Was Cannon tried? No. Cannon testified. He was convicted. He received an 18-month sentence, and I believe he's part of the Bureau of Prisons. He's out on the streets, and he could be available to testify again in a retrial of this case. Quick question. Your client was convicted, or sentenced, rather, to concurrent 46-month terms. She just got a 46-month sentence. Okay. So unless we were to vacate on both counts, there would be no net benefit to your client. For example, if we hypothetically vacated one count and affirmed the other, your client would still be serving 46 months, correct? Yes, but I believe that would not be the correct result, respectfully. I understand that. And it would be useful for the sake of letting the government know, as would, more importantly, vacating both of these convictions so that the government proves up its cases not by pieces of paper but with testimony that could be cross-examined and confronted. But vacating one but not the other doesn't improve your client's position? No, Your Honor. On sentence, well, except perhaps a special assessment, but it does change whether she's convicted of two crimes or one. It would change, and she would probably maybe get $100 back from her special assessment. Right, and also she wouldn't have the same criminal record. She would have a different criminal record. But these two are so closely linked, the conspiracy to transport aliens and the substantive offense of transporting aliens, this court should find harm just on that basis. Okay. Thank you. Thank you. We have your argument. We note that your court appointed, and we appreciate your service to the court, and we appreciate both arguments today. Thank you.